# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FARMINGTON-GIRARD, LLC

    Plaintiff,

    v.

PLANNING & ZONING COMMISSION OF THE
CITY OF HARTFORD, *et al.*,

    Defendants.

No. 3:17-cv-1915 (MPS)

## RULING ON MOTION TO DISMISS

Plaintiff Farmington-Girard, LLC ("Farmington-Girard") brings this action against Defendants City of Hartford ("Hartford") and the Planning & Zoning Commission of the City of Hartford ("PZC" and together, the "Municipal Defendants"), alleging that PZC has unlawfully blocked the development of Farmington-Girard's property at 510 Farmington Avenue in Hartford, Connecticut as a drive-through fast food restaurant. Farmington-Girard asserts claims under 42 U.S.C § 1983 for defendants' alleged violation of its rights under the U.S. constitution, a declaratory judgment claim, and state law claims for inverse condemnation and municipal estoppel. After Farmington-Girard initially filed suit in state court, Hartford removed the case to this Court. The Municipal Defendants now move under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint (ECF No. 37, "Am. Compl."), arguing that Farmington-Girard's claims are not ripe, that the Amended Complaint fails to allege any constitutional violations, and that it does not adequately plead the state law claims. Because I find that Farmington-Girard's claims are ripe but that some of them fail as a matter of law, I GRANT in part and DENY in part the motion to dismiss. (ECF No. 42.)

# I.    Factual Background

The facts below are drawn from the Amended Complaint and, where relevant, documents referenced therein or of which the Court may take judicial notice.[1]

## A.    510 Farmington Avenue

Farmington-Girard acquired the property at 510 Farmington Avenue from Shell Oil Company in 2005. (Am. Compl. ¶ 22.) Due to the property's previous use as a gas station, the structures had to be razed for environmental remediation efforts, and the property is currently an empty lot. (Am. Compl. ¶ 23.) A Burger King restaurant with drive-through window service immediately abuts the property to the west and a residential zone abuts it to the north. (Am. Compl. ¶ 24.) Between its acquisition in 2005 and December 2012, 510 Farmington Avenue was located in a B-3 (Linear Business) zoning district, which, under Hartford's zoning regulations then in effect, permitted the property to be used as a fast food restaurant with a drive-through window. (Am. Compl. ¶ 25.)

Since its acquisition of 510 Farmington Avenue, Farmington-Girard has actively tried to market the property for use as a fast food restaurant with a drive-through window. (Am. Compl. ¶ 26.) According to Farmington-Girard, "[a]ny other use renders the property highly unmarketable for purposes of generating sufficient cash flow to recoup the purchase, remediation and carrying costs of the property, because, inter alia, the property is competitively disadvantaged because it is bordered by a fast food restaurant with drive-thru window service (Burger King), the market price at the time of purchase factored in allowance for a restaurant with drive-thru window service," and because the zoning changes discussed below affected the property. (*Id.*)

---

[1] Although the Municipal Defendants challenge various "[m]isstatements of fact" in the Amended Complaint (ECF No. 49 at 7–10), I must accept all well-pleaded factual allegations in it as true.

### B.     The McDonald's Ground Lease

On September 12, 2012, Farmington-Girard and McDonald's USA, LLC ("McDonald's") executed a letter of intent to enter into a ground lease[2] for 510 Farmington Avenue, subject to a zoning contingency to allow for the construction of a McDonald's restaurant on the property.  (Am. Compl. ¶ 28.)    Despite various zoning changes discussed below, Farmington-Girard and McDonald's continued to negotiate and executed a final ground lease for the development of a McDonald's restaurant with drive-through window service at 510 Farmington Avenue on August 21, 2013.  (Am. Compl. ¶¶ 29, 36, 37.)   The ground lease was subject to a contingency that McDonald's secure land use approvals to allow the construction of a McDonald's restaurant with drive-thru window service. (Am. Compl. ¶ 37.)   The ground lease had a limited period for satisfaction of the contingency, which the parties later extended through November 15, 2013, and ultimately, through February 20, 2015. (Am. Compl. ¶¶ 38, 43.)

On February 20, 2015, the ground lease expired, and because of the PZC's efforts to block the development described below, McDonald's halted its pursuit of 510 Farmington Avenue.  (Am. Compl. ¶ 78.)

### C.     PZC's Zoning Changes & Denial of Farmington-Girard's Application

Beginning in 2012, PZC purported to make extensive changes to the zoning and use rules affecting 510 Farmington Avenue and took other actions to prevent the development of a fast food restaurant with a drive-though window.

---

[2] Black's Law Dictionary defines a "ground lease" as a "long-term . . . lease of land only . . . [that] typically involves commercial property, and any improvements build by the lessee usu[ally] revert to the lessor."  *Ground Lease*, Black's Law Dictionary (10th ed. 2014).

<em>1.      Farmington-Girard's December 10, 2012 Application & Response</em>

In late 2012, while negotiating the terms of the ground lease with McDonald's, Farmington-Girard learned of a proposal to change the zoning of 510 Farmington Avenue to prohibit fast-food restaurants with drive-through windows.  (Am. Compl. ¶ 29.)  To preserve its rights, Farmington-Girard hired a professional engineer to submit a site plan for a fast food restaurant with drive-through window service at 510 Farmington Avenue.  (Am. Compl. ¶ 30.)  On December 10, 2012, the engineer submitted a "site plan/special permit application" for a fast food restaurant and paid the $300 required fee (hereinafter the "December 10, 2012 application"), which the Planning Division of the Hartford Department of Development Services ("DDS")[3] accepted and assigned an application number. (Am. Compl. ¶ 30.)

Following the application, Kim Holden, the Chief Staff Planner of the Planning Division of DDS, informed Farmington-Girard by letter dated December 19, 2012 that its application was "considered incomplete and as such, the time clock on the application has been stopped," and further that, "[i]f you wish to proceed with your submittal, please submit the required information" (hereinafter the "Holden letter").  (Am. Compl. ¶ 34.)

<em>2.      The December 11, 2012 Rezoning Decision</em>

On December 11, 2012, the PZC held a public hearing on and approved the rezoning of 510 Farmington Avenue and five other non-contiguous properties on Farmington Avenue from the B-3 (Linear Business) zoning district to the B-4 (Neighborhood Business) zoning district (the "December 11, 2012 rezoning decision").  (Am. Compl. ¶ 31.)  Due to grandfathering rules, 510 Farmington Avenue was the only property actually affected by the change.  (Am. Compl. ¶ 32.)

---

[3] DDS is alleged to be an agent of the City of Hartford.  References to DDS should thus be construed to refer to Hartford.  (Am. Compl. ¶ 21.)

The new B-4 zoning prohibited use of 510 Farmington Avenue as a fast food restaurant with drive-through window service.  (Am. Compl. ¶¶ 33, 39.)

Farmington-Girard timely appealed the December 11, 2012 rezoning decision to Hartford Superior Court.[4]  (Am. Compl. ¶ 35.)  On August 19, 2014, the Superior Court upheld Farmington-Girard's appeal of the 2012 zone change on the basis of defective pre- and post-hearing notice. (Am. Compl. ¶ 40.)  As a result of this decision, 510 Farmington Avenue was "restored to the B-3 (Linear Business) zoning district and the Hartford Zoning Regulations then in effect allowed the property to be used as a fast food restaurant with drive-thru window service by special permit." (Am. Compl. ¶ 41.)  At that point, Farmington-Girard "could have submitted a new site plan/special permit application for a fast food restaurant with drive-thru window service which would have been a permitted use under and been processed pursuant to the zoning regulations then in effect, the restored B-3 (Linear Business) zoning district."  (*Id.*)  However, "in reliance on defendants' actions and statements . . . including defendants' acceptance of plaintiff's December 10, 2012 application, defendants' retention of plaintiff's $300 application fee, and defendants' December 19, 2012 letter stating that plaintiff could proceed with the December 10, 2012 application upon submission of further information, [Farmington-Girard] did not submit a new site plan/special permit application."  (*Id.*)  Rather, in October 2014, Farmington-Girard "provided further information supplementing and in support of its December 10, 2012 application," as discussed below.  (*Id.;* Am. Compl. ¶ 51.)

---

[4] *Farmington-Girard, LLC v. Planning & Zoning Comm'n of City of Hartford*, No. HHDCV136038698S, 2014 WL 4815345, at *1 (Conn. Super. Ct. Aug. 19, 2014) ("*Farmington-Girard I*").

### 3. The Fall 2014 Text Amendments

On September 23, 2014, PZC, "without notice to [Farmington-Girard]," held a public hearing on proposed text amendments to the Hartford Zoning Regulations and approved the amendments (the "Text Amendments"). (Am. Compl. ¶ 45.) One of the text amendments prohibited "fast food restaurants with drive-thru window service abutting residential districts or being located with 300 feet of another such establishment." (*Id.*) Because 510 Farmington Avenue abutted both the Burger King with a drive-through window and a residentially-zoned property, the text amendments effectively prohibited the use of 510 Farmington Avenue as a fast food restaurant with a drive through-window. (Am. Compl. ¶ 46.) The text amendments were set to become effective a month later, on October 18, 2014. (*Id.*)

### 4. The October 20, 2014 Meeting

Following McDonald and Farmington-Girard's second extension of the contingency conditions in the ground lease, McDonald's hired a land use lawyer, Daniel E. Kleinman, as well as a civil engineering firm and a traffic engineering firm, to process the land use applications for 510 Farmington Avenue. (Am. Compl. ¶ 44.) On October 10, 2014, Kleinman, unaware of the text amendments due to go into effect a week later, scheduled a meeting with two individuals from DDS, Thomas Deller and Khara Dodds, to discuss the proposed plans for 510 Farmington Avenue. (Am. Compl. ¶ 47.) At Deller's behest, Dodds twice postponed the meeting with Kleinman until October 20, 2014, two days after the amendments were due to go into effect. (Am. Compl. ¶¶ 48–49.) Although no reason for the postponements were given, Farmington-Girard alleges that "[d]efendants intentionally delayed the . . . meeting until after the October 18, 2014 effective date of the text amendments in order to preclude and prohibit [Farmington-Girard] from filing a new site plan/special permit application for a fast food restaurant with drive-thru window service which

would have been a permitted use under the zoning regulations in effect prior to October 18, 2014, the restored B-3 (Linear Business) zoning district." (Am. Compl. ¶¶ 48–49, 56.)

Ultimately, Kleinman, as well as a representative of the retained engineering firm, met with Dodds and other staff at DDS on October 20, 2014. (Am. Compl. ¶ 51.) At the meeting, they delivered on Farmington-Girard's behalf "a set of materials completing the site plan/special permit" application submitted by Farmington-Girard in December 2012. (*Id.*)

According to the complaint, because "the site plan/special permit application was complete and complied with the applicable regulations in effect on December 10, 2012, the restored B-3 (Linear Business) zoning district," there was a "certainty or at least a very strong likelihood that if the [PZC] processed the application in accordance with the applicable zoning regulations," the December 10, 2012 application "would and should have been approved." (*Id.*; Am. Compl. ¶ 54.)[5] In other words, Farmington-Girard alleges, it "was clearly entitled to processing and approval by defendants of the application." (Am. Compl. ¶¶ 51, 54.) However, Dodds informed Kleinman and the engineering firm representative that because of the Text Amendments, which became effective two days earlier, McDonald's could not proceed with the December 10, 2012 site plan and special permit application. (Am. Compl. ¶ 55.)

### 5. *Dodds' October 28, 2014 letter*

Following the meeting, Dodds wrote a letter to Kleinman dated October 28, 2014 advising Kleinman that "[a]fter our initial review, it was clear the original site plan application #2012-6263 filed in December 2012 lacked the required materials to be considered valid. The application was

---

[5] In particular, Farmington-Girard alleges that "in reviewing [Farmington-Girard's] site plan and special permit application for a permitted use," PZC "acts in an administrative capacity and its review of the site plan is ministerial and it has no independent discretion beyond determining whether the application complies with the applicable regulations, and it is under a mandate to apply the requirements of the regulations as written." (Am. Compl. ¶ 53.)

submitted without site and architectural plans; as a result the application is void" (hereinafter the "Dodds letter"). (Am. Compl. ¶ 57.) "Dodds' letter also stated that if [Farmington-Girard] submitted a new application it must comply with the zoning regulations then in effect, as opposed to the regulations in effect on December 10, 2012." (*Id.*) Dodds' letter did not refer to the December 19, 2012 Holden letter stating that Farmington-Girard's application was merely "considered incomplete." (*Id.*; Am. Compl. ¶ 34.) Farmington-Girard was not sent the October 28, 2014 Letter, nor was the original $300 fee or application returned to it. (Am. Compl. ¶¶ 57, 59.)

### 6. *The October 28, 2014 Rezoning to a 'B-4' District*

On October 28, 2014, the date of Dodds' letter, PZC held a public hearing without notice to Farmington-Girard and "voted to change the zone of 510 Farmington Avenue from the B-3 (Linear Business) zoning district to the B-4 (Neighborhood Business) zoning district." (Am. Compl. ¶ 62.) This would again prohibit use of 510 Farmington Avenue as a fast food restaurant with drive-through window service, and once again 510 Farmington Avenue was the only property affected by the change. (*Id.*) Farmington-Girard alleges that defendants "intentionally delayed sending" the October 28, 2014 letter purporting to void Farmington-Girard's application "to insure [sic] that it would not be received until after the October 28, 2014 zone change" and thus "preclude" Farmington-Girard "from filing a new site plan/special permit application" under zoning regulations that permitted a drive-through window. (Am. Compl. ¶ 63.)

### 7. *McDonald's Variance Application*

Also on October 28, 2018, the same day as the hearing, Kleinman applied for a variance from the newly effective Text Amendments at McDonald's direction. (Am. Compl. ¶¶ 60–62.) The hearing on McDonald's variance application before the Zoning Board of Appeals ("ZBA")

was initially scheduled for November 18, 2014, but was postponed three times—once unilaterally by DDS for lack of a quorum, once at Kleinman's election for a similar reason, and once by the ZBA. (Am. Compl. ¶¶ 64, 66, 67, 70.) On January 20, 2015, the ZBA held the hearing and denied the variance application for lack of hardship. (Am. Compl. ¶ 70.)

### D. The Consolidated Appeals

Following the PZC's October 28, 2014 rezoning of 510 Farmington Avenue to a B-4 district, Farmington-Girard appealed the decision to the Hartford Superior Court on November 20, 2014, claiming defective notice. (Am. Compl. ¶ 65.) While this appeal was pending (and as the ZBA postponed a hearing on McDonald's variance on the property), PZC held a December 9, 2014 public hearing, without notice to Farmington-Girard, where it "re-approved" the same rezoning change (the "December 9, 2014 re-approval"). (Am. Compl. ¶ 68.) Farmington-Girard also appealed this "reapproval." (Am. Compl. ¶ 69.)

On February 23, 2015, Farmington-Girard appealed the Text Amendments adopted in September 2014, again citing defective notice. (Am. Compl. ¶ 71.) Similarly, while that appeal was pending, on April 14, 2015, PZC held a public hearing without notice, and purportedly "re-approved" the Text Amendments in identical form (the "April 14, 2015 reapproval"). (Am. Compl. ¶ 72.). Farmington-Girard appealed this reapproval too. (Am. Compl. ¶ 73.)

These four appeals were consolidated, and the Superior Court dismissed all of them in a decision dated September 11, 2017. (Am. Compl. ¶¶ 65–73.) *See Farmington-Girard, LLC v. Planning & Zoning Comm'n of City of Hartford*, No. LNDCV146055443S, 2017 WL 6888851, at *1 (Conn. Super. Ct. Sept. 11, 2017) ("*Farmington-Girard II*").[6] Specifically, the Superior Court

---

[6] I draw here from the opinion directly, which is incorporated by reference in Farmington-Girard's compliant (*see, e.g.*, Am. Compl. ¶ 75) and a document of which this Court may take judicial notice.

found that PZC gave inadequate (1) pre-hearing notice of the hearing at which the Text Amendments were adopted, (2) pre- and post-hearing notice for the October 28, 2014 rezoning to a 'B-4' district, (3) pre- and post-hearing notice of the December 9, 2014 re-approval of the 'B-4' rezoning, and (4) pre- and post-hearing notice for its April 14, 2015 reapproval of the Text Amendments. *Id.* at *4–5. As these decisions were void, and because the Superior Court had previously determined that the Holden letter was "less than unequivocal," the court concluded that Farmington-Girard's application was still pending as of the October 20, 2014 Meeting with DDS. *Id.* at *7. (*See also* Am. Compl. ¶ 75.) Finally, the Superior Court concluded that Dodds was authorized by the applicable regulatory authority to declare the application "void" in her October 28, 2014 Letter, but also that Farmington-Girard failure to appeal her determination meant that it had failed to exhaust its administrative remedies. *Id.* at *7–9. Accordingly, the Superior Court dismissed the appeals "for failure to exhaust administrative remedies." *Id.* at *9.

### E. The 2016 Form-Based Regulations

On January 12, 2016, while the consolidated appeals were pending, PZC adopted superseding form-based regulations that prohibited fast food restaurants with drive-through window service abutting residential districts or located with 300 feet of another such establishment. (Am. Compl. ¶ 77.)[7] Because these zone changes remain in effect, they preclude "preclude plaintiff from marketing and developing its property for use as a fast food restaurant with drive-thru window service." (*Id.*)

---

[7] *Farmington-Girard II* described these changes as "comprehensive form-based regulations that supercede the prior amendments and render the prior regulations as well as the text and zoning map amendments obsolete." *Farmington-Girard, LLC*, 2017 WL 6888851, at *2.

### F. This Action

Farmington-Girard brought this action against PZC, Hartford, and Thomas Deller on September 15, 2017 in Superior Court, Judicial District of Hartford. (ECF No. 1 at 7.) Hartford removed the case to this Court on November 15, 2017 under the Court's federal question jurisdiction. (ECF No. 1 at 4.) After those three defendants filed both a motion to dismiss and an amended motion to dismiss (ECF Nos. 16, 21), the Court authorized Farmington-Girard to either respond to the motion to dismiss or file an amended complaint. (ECF No. 28.) The parties subsequently stipulated to the voluntary dismissal of claims against Thomas Deller on March 7, 2018, which this Court approved. (ECF Nos. 31, 32.) Farmington-Girard then timely filed an amended complaint on March 22, 2018, asserting claims against PZC and Hartford only. (ECF No. 37.)

Farmington Girard's amended complaint asserts four counts. (ECF No. 37.) The first count under 42 U.S.C. § 1983 alleges that the Municipal Defendants' conduct violated Article I Section 10, Clause 1, and the Fifth and Fourteenth Amendments to the U.S. Constitution. In particular, Farmington-Girard asserts that Municipal Defendants' actions constituted a "bill of attainder" and also impaired the obligation of contract with respect to the McDonald's ground lease. (Am. Compl. ¶¶ 89–90.) Farmington-Girard further alleges that the Municipal Defendants' conduct violated both its procedural and substantive due process rights. (Am. Compl. ¶¶ 91–96.) Farmington-Girard also asserts that the Municipal Defendants violated the Equal Protection clause by blocking its application and treating it differently than the nearby Burger King. (Am. Compl. ¶¶ 97–100.) Finally, Farmington-Girard asserts a Takings claim under the Fifth and Fourteenth Amendments. (Am. Compl. ¶ 102.)

The second count alleges that defendants took Farmington-Girard's property by inverse condemnation in violation of Article First, § 11, of the Connecticut Constitution. (Am. Compl. ¶ 106.) The third count alleges municipal estoppel, specifically that Farmington-Girard relied on the Municipal Defendants' actions to its detriment in not submitting a new site plan/special permit application immediately after the August 19, 2014 decision but instead providing further information supplementing the December 10, 2012 application. (*See* Am. Compl. ¶¶ 107–110.) The fourth and final count seeks a declaratory judgment under 28 U.S.C. § 2201 that would effectively require the Municipal Defendants to permit Farmington-Girard to develop the property as a fast food restaurant with a drive through window. (Am. Compl. ¶ 113.) Farmington-Girard seeks compensatory and punitive damages, attorney's fees, and various preliminary and permanent injunctive relief, declaratory relief, and other orders seeking essentially the same relief as in its fourth count. (Am. Compl. 28–30.)

## II.    Legal Standard

On a motion to dismiss under Rule 12(b)(6), I take the plaintiff's factual allegations in the complaint "to be true and draw[] all reasonable inferences in" its favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). In addition, "[m]atters judicially noticed by the District Court are not considered matters outside the pleadings." *Id.* (citation omitted); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.") (citation omitted).

Similar principles apply to that part of the Municipal Defendants' motion brought under Rule 12(b)(1). *See Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) ("The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical.") (citations and internal quotation marks omitted). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the [non-movant]." *Id.* (citations and internal quotation marks omitted). "On a Rule 12(b)(1) motion, however, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citation omitted). In addition, the Court may refer to evidence outside the pleadings in deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court

may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."). "A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Gonzalez*, 2014 WL 2475893, at *2 (citation omitted).

### III.    Discussion

The Municipal Defendants move to dismiss Farmington-Girard's claims under Rule 12(b)(1) as unripe, or in the alternative, under Rule 12(b)(6) for failure to state a claim. (ECF No. 49 at 1.) In particular, the Municipal Defendants argue that: Farmington-Girard's claims are unripe because the underlying zoning decisions are the subject of a pending state court appeal; Farmington-Girard fails to allege plausible violations of the Due Process Clause, Equal Protection Clause, Contracts Clause, or Bill of Attainder Clause to support its § 1983 claim; PZC is not a separate legal entity that can be sued under state law; the Court should decline to exercise supplemental jurisdiction over the state law claims; and Farmington-Girard fails to state claims for tortious interference, inverse condemnation, municipal estoppel, or declaratory judgment. (ECF No. 49 at 10–28.) For the following reasons, I GRANT in part and DENY in part the motion to dismiss.

### A.    Ripeness

The Municipal Defendants argue that Farmington-Girard's federal claims are unripe and should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (*See* ECF No. 49 at 10.) "Ripeness is a jurisdictional inquiry . . . rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). In *Williamson Cty. Reg'l*

*Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court set forth a two-prong test to determine ripeness in the takings context: first, "the government entity charged with implementing the regulations [must] reach[] a final decision regarding the application of the regulations to the property at issue"; and second, the property owner must "seek compensation through the procedures the State has provided for doing so." 473 U.S. at 186–87, 194. This framework has been extended beyond takings to equal protection and due process claims arising in land use disputes. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 89 (2d Cir. 2002) (applying the *Williamson* framework to equal protection and due process claims). Only the first, 'final decision' prong of *Williamson* is at issue here. (*See* ECF No. 49 at 12 (challenging only the first prong), ECF No. 53 at 21, 22 n.1 (addressing same).)[8] As this Court has recently noted, Second Circuit precedent does not require that a landowner appeal to a purely remedial body to satisfy *Williamson*'s first prong:

> The Second Circuit, relying upon the Supreme Court's decision in *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 175 (1985), has set out a specific standard for ripeness in the context of land use disputes. *See Murphy* [*v. New Milford Zoning Comm'n*], 402 F.3d [342, 347 (2d Cir. 2005)]. This standard requires a plaintiff challenging a zoning restriction "to obtain[ ] a final, definitive position from the entity charged with implementing the zoning regulations" before bringing suit. *Murphy*, 402 F.3d at 342. But a property owner is not required to litigate a dispute before a "purely remedial body" to make it ripe. *See id.* at 350 ("[A] property owner will not be required to litigate a dispute before a zoning board of appeals if it sits as a purely remedial body."). A "remedial" body is one that is "empowered, at most, to review [a zoning entity's] rejection, not to participate in the [entity's] decisionmaking." *Williamson*, 473 U.S. at 193.

---

[8] Farmington-Girard correctly notes that defendants could not argue that Farmington-Girard failed to obtain a denial of just compensation through state procedures, because "defendants removed this case from state court, where plaintiff had sought compensation under the state procedure provided for, a lawsuit for inverse condemnation." (ECF No. 53 at 22 n.1.) *See Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) ("[W]hen a defendant removes a takings claim from state court to federal court, the second prong of *Williamson County* is satisfied.").

*Firetree, Ltd. v. Norwalk*, No. 3:17CV1088 (MPS), 2018 WL 4398253, at *4 (D. Conn. Sept. 14, 2018).

The Municipal Defendants argue that the 'final decision' prong is not met, because "the final determination of the permissible use of [510 Farmington Avenue] depends upon a decision" by the Connecticut Appellate Court in *Farmington-Girard II*. (ECF No. 49 at 12.) Citing Connecticut's statutory scheme for administrative appeals from zoning decisions, Conn. Gen. Stat. § 8-8, defendants argue that "[t]he Appellate Court's authority over the case is part of the state's scheme of zoning such that, while the Appellate Court case is pending, the Plaintiff cannot point to a definitive position or a concrete injury." (ECF No. 49 at 12.) I disagree, because under Connecticut law, the Appellate Court is a purely remedial body and so Farmington-Girard had already obtained a final decision before its appeal of *Farmington-Girard II*.

Conn. Gen. Stat. § 8-8 provides that an aggrieved property owner may, under certain circumstances, appeal zoning decisions to Connecticut Superior Court, which has authority to "reverse or affirm, wholly or partly or . . . revise, modify or remand the decision from which the appeal was taken . . . ." Conn. Gen. Stat. § 8-8(l). But the Connecticut Supreme Court has held that such an appeal is remedial for purposes of *Williamson*. *See Port Clinton Assocs. v. Bd. of Selectmen of Town of Clinton*, 217 Conn. 588, 591–596, 607 (1991). Recognizing that "a property owner need not pursue *remedial* procedures that merely review the propriety of the initial decisionmaker's action," the court held that an administrative appeal to Superior Court under Conn. Gen. Stat. § 8-8 was "precisely the type of procedure that a claimant under 42 U.S.C. § 1983 need *not* pursue as a prerequisite to filing his suit." *Port Clinton Assocs.*, 217 Conn. at 606–07 (emphasis in original); *see Firetree, Ltd.*, No. 3:17CV1088 (MPS), 2018 WL 4398253, at *5, n.2

(holding the same and noting that to the extent *Port Clinton* rests on an interpretation of state law, this Court is bound by it).

Because the Appellate Court reviews judgments of the Superior Court, there is even less justification here to find that to find that the Appellate Court is the initial decisionmaking body. *See also* Conn. Gen. Stat. § 8-8(o) (providing that Appellate Court "conduct[s] [appeals] in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the Superior Court . . . .").[9] The Municipal Defendants do not address *Port Clinton*. Accordingly, because the Appellate Court is a purely remedial body, Farmington-Girard's claims are not unripe solely because its appeal of *Farmington-Girard II* is pending.

Nonetheless, this does not end the inquiry. This Court identified a second issue that neither party initially addressed, and so the Court *sua sponte* ordered and received supplemental briefing from the parties. (ECF Nos. 60, 64, 65.) In particular, "the final-decision requirement conditions federal review on a property owner submitting at least one meaningful application for a variance." *Kowalczyk v. Barbarite*, 594 F. App'x 690, 692 (2d Cir. 2014) (summary order) (citing *Murphy*, 402 F.3d at 348); *see also Port Clinton*, 217 Conn. at 607 ("[I]n many instances, a final decision by the 'initial decisionmaker,' really means a decision by the zoning board of appeals, when that

---

[9] *Firetree* further illustrates this point. In that case, the potential operator of a halfway house brought several claims, including due process, equal protection, and takings claims, against the City of Norwalk, its Zoning Board of Appeals, and others for their denial of various permits. 2018 WL 4398253, at *1. In that case, the plaintiff appealed the City's initial denial of its tenant occupancy permit, certificate of occupancy, and an application for special exception to the Zoning Board of Appeals. *Id.* at *3–4, *5. However, after the Zoning Board of Appeals denied the appeals, plaintiff did not pursue a further appeal to Connecticut Superior Court under Conn. Gen. Stat. § 8-8(b). *Id.* at *5. This Court rejected the defendants' argument that plaintiffs' constitutional claims were unripe, reasoning that because the Superior Court had the statutory authority to review the Zoning Board of Appeals' decision under Conn. Gen. Stat. § 8-8 only to the extent necessary to "determine whether it was unreasonable, arbitrary or illegal," the Superior Court sat as a remedial and not participatory body to which appeal was unnecessary before filing suit. *Id.*

body is not acting in a reviewing capacity but is exercising its power to grant variances and exceptions."). "Undergird[ing]" the requirement to seek a variance are strong policy concerns: aiding development of the record; avoiding potential constitutional disputes; and respecting the primacy of local authorities over land use disputes. *Murphy,* 402 F.3d at 348. But most saliently here, "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel." *Id.*

However, "the finality requirement is not mechanically applied," and a "property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Id.* at 349. Applying for a variance is futile "when a zoning agency lacks discretion to grant variances *or* has dug in its heels and made clear that all such applications will be denied." *Murphy,* 402 F.3d at 349 (emphasis added). Courts have found that a local zoning board has "dug in its heels" where the board denies "at least one meaningful application for a variance" or the board instead uses "repetitive and unfair procedures in order to avoid a final decision." *Sunrise Detox V, LLC*, 769 F.3d at 124 (holding that plaintiffs' "failure to submit [ ] at least one meaningful application for a variance prevents us from determining whether the board has dug in its heels and made clear that all such applications will be denied.") (citations and quotation marks omitted); *Sherman*, 752 F.3d at 561, 563 (holding that futility exception applies where the town uses "repetitive and unfair procedures" to move the "finish line . . . just one step away"). Accordingly, I must determine whether Farmington-Girard sought a variance from the regulations for which it now seeks relief and, if not, whether it has plausibly alleged that the futility exception applies.

Farmington-Girard challenges five regulations adopted by the PZC: (1) the December 11, 2012 rezoning decision from B-3 to B-4; (2) the September 23, 2014 adoption of the Text

Amendments; (3) October 28, 2014 rezoning decision from B-3 to B-4; (4) the December 9, 2014 re-approval of the October 28, 2014 zoning change; and the (5) April 14, 2015 reapproval of the Text Amendments. (Am. Compl. ¶¶ 31, 33, 45, 62, 68, 72.) The complaint alleges that a variance was sought from only one of the five challenged regulations—the September 23, 2014 adoption of the Text Amendments—and that it was ultimately denied for lack of hardship. (*See* Am. Compl. ¶ 61 ("Attorney Kleinman submitted an application for a variance from newly amended Article IV, §§ 913 (a) (5) and (6) on behalf of McDonald's USA, LLC on October 28, 2014."), ¶ 70 ("The Hartford Zoning Board of Appeals . . . denied the variance for lack of hardship."); ECF No. 64 at 2 (conceding that McDonalds sought a variance from the Text Amendments).

In this case, I need not decide whether a landowner who challenges multiple zoning regulations and unsuccessfully seeks a variance from only one of them has obtained a "final decision" under the first prong of *Williamson*. That is so because Farmington-Girard has plainly alleged enough facts to show that the futility exception applies. Here, the ZBA denied a variance from the Text Amendments for lack of hardship on January 20, 2015. (Am. Compl. ¶ 70.) Based on the ZBA's variance application and decision, the manner of the ZBA's rejection makes "clear that no [drive-through] project will be approved" at 510 Farmington Avenue. (ECF No. 65-1.) *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir. 1990). The Zoning Board of Appeals cited as reasons for the denial of a variance from the Text Amendments: (1) the December 9, 2014 re-approval of the B-3 to B-4 zoning change; (2) that Farmington-Girard's proposed used was incompatible with Hartford's "Plan of Conservation and Development"; and (3) that Farmington Girard "failed to demonstrate a reasonable hardship," which must exceed "mere financial loss." (ECF No. 65-1 at 1, 8.) The Zoning Board of Appeals' inclusion of the purportedly unrelated reapproval of the B-3 to B-4 rezoning makes clear that any variance applications from

the other four regulations—three relating to the B-3 to B-4 change and the other reapproving the Text Amendments from which the original variance was denied—would be rejected for the same reason. Accordingly, Farmington-Girard has plausibly alleged that the futility exception applies.

The Municipal Defendants cite *Williamson* and *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986), but neither compels a different result here. (ECF No. 49 at 11–12.) In *Williamson*, the property owner submitted a plan for developing its property, but after the zoning commission found that the plan did not conform with applicable regulations, the owner did not seek variance from either the commission or the board of zoning appeals. 473 U.S. at 187–191. The Supreme Court held that because no variances were sought, the commission's "denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision." 473 U.S. at 194. Unlike in *Williamson*, Farmington-Girard did seek a variance here, which was denied. In *MacDonald, Sommer & Frates v. Yolo Cty.*, the Court held that a takings claim was not ripe where the developer "submitted one subdivision proposal," which the reviewing board rejected on multiple grounds, but the developer did not submit less intensive plans. 477 U.S. 340, 351, 353 n.9. *MacDonald* addressed only whether a "final decision" had been reached and pre-dated the Second Circuit's recognition of the "futility" exception in *Murphy*, 402 F.3d at 348 (citing *MacDonald*). Indeed, the Court of Appeals has subsequently recognized that where an applicant unsuccessfully seeks a variance, the futility requirement is met notwithstanding whether the applicant has exhausted all other options. *See Martin v. Town of Simsbury*, 735 F. App'x 750, 752 (2d Cir. 2018) (summary order) (holding that the *MacDonald* does "not require the landowner to replace its plans to build a subdivision with plans to build a swimming pool.").

In sum, Farmington-Girard has shown that seeking additional variances would be futile, and accordingly that all of its federal challenges are ripe for adjudication. Accordingly, the Municipal Defendants' motion to dismiss Farmington-Girard's claims as unripe is DENIED.

## B. Claims Against the Planning & Zoning Commission

The Municipal Defendants move to dismiss Farmington-Girard's claims against them under Rule 12(b)(6) for failure to state a claim. I address first their argument that the PZC is not a person capable of being sued. Although the Municipal Defendants move to dismiss only the state law claims against PZC because it is not a separate "body politic" that can sue or be sued under state law, the same reasoning applies to Farmington-Girard's federal claims under § 1983. (ECF No. 49 at 21.) *See Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 255 (D. Conn. 2012) ("Cases examining whether a particular entity is a 'person' for the purposes for section 1983 look to whether it is an 'independent legal entity' capable of suing and being sued.") (citation omitted)). Therefore, the Court analyzes these claims together and determines whether all claims against PZC should be dismissed on this ground.

Connecticut law authorizes any municipality, including any town, city, or consolidated town and borough, to sue and be sued. Conn. Gen. Stat. § 7–148(a), (c)(1)(A). As Connecticut courts have stated, "[u]nless departments within municipal government constitute distinct 'bodies politic' under state law, the proper defendant is the municipality itself, not an administrative subdivision." *Luysterborghs v. Pension & Ret. Bd. of City of Milford*, 50 Conn. Supp. 351, 355 (Super. Ct. 2007) (citation omitted). In recognizing that certain municipal bodies are not distinct 'bod[ies] politic,' "courts have found the absence of a specific statute enabling the department to sue or be sued to be dispositive." *Id.* (collecting cases holding that police department, fire department and central communications office could not be sued directly). "[W]here the

legislature has intended to grant such independent legal status to a department or board, it has done so explicitly." *Id.* at 356 (citing statutes that expressly authorize municipal electric energy cooperatives, school districts, transit districts, and housing authorities as bodies politic with the power to "sue and be sued").

Along similar lines, judges in this district, including me, have dismissed § 1983 and state-law claims against municipal police departments because they are not legal entities distinct from the municipality. *See Rose v. City of Waterbury*, No. 3:12CV291 VLB, 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (dismissing § 1983 and state law claims against municipal police department because the "Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued."); *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases for the proposition that a municipal police department is not a person under § 1983 and dismissing claims against it); *Conquistador v. Hartford Police Department*, No. 3:16-CV-151 (MPS), 2017 WL 969264, at *2 (D. Conn. Mar. 13, 2017) (same).

Farmington-Girard points to no statute that designates PZC as a body politic or authorizes it to sue and be sued. Connecticut law authorizes municipalities to: (1) create a zoning commission (Conn. Gen. Stat. § 8–1(a)); (2) create a planning commission (Conn. Gen. Stat. § 8–19(a)); or (3) designate either the existing planning or a zoning commission as a combined planning and zoning commission (Conn. Gen. Stat. § 8–4a). "None of these statutes designate the zoning commission, the planning commission, or the planning and zoning commission as a separate legal entity or body politic." *Holt v. Town of Stonington*, No. 3:09-CV-2069 JCH, 2011 WL 5864812, at *4 (D. Conn. Nov. 18, 2011). "In addition, none of the statutes state that any of these commissions may sue or

be sued." *Id.* Accordingly, the PZC is not a "person" for Farmington-Girard's § 1983 claims nor a separate "body politic" under state law. Farmington-Girard's claims against PZC must therefore be dismissed.

Farmington-Girard argues that PZC is a proper defendant because "statutory authority . . . authorizes a planning and zoning commission to bring zoning appeals (in other words, sue) in its own name in state court, . . . [and] appeals can also be brought in state court against a planning and zoning commission (be sued)." (ECF No. 53 at 38.) As Judge Hall has previously recognized in the analogous context of wetlands regulation, however, "actions pursuant to the explicitly authorized administrative appeals process or the private right of action to ensure enforcement of wetlands regulations is not the same as an explicit statutory authorization to constitute an entity as a body politic capable of suing and being sued." *Watrous*, 902 F. Supp. 2d at 257. "A successful administrative appeal does not render the defendant authority liable for monetary damages, and it is difficult to generalize from the provision that the legislature has conferred on the authority the capacity to be sued in other contexts." *Id.* (quoting *Zahrijczuk v. Water Pollution Control Auth. of Town of Branford*, 52 Conn. Supp. 422, 427 (Super. Ct. 2012).) Accordingly, the PZC's specific authority to participate in zoning appeals does not transform it into a separate body politic under state law.

Farmington-Girard's argument that explicit "statutory authority is not always required in order for a municipal entity to be sued" is likewise unpersuasive. (ECF No. 53 at 39.) None of the cases it cites describe a planning and zoning commission as a qualifying "quasi-municipal corporation" for which statutory authorization is not required. *See Zahrijczuk*, 52 Conn. Supp. at 434 (concluding that water pollution control entity could sue and be sued because "water pollution control authorities are quasi-municipal corporations" created by statute (citation omitted));

*McLoud v. Selby*, 10 Conn. 390, 394 (1835) (holding that school district is quasi corporation capable of being sued); *Ward v. Hartford Cty.*, 12 Conn. 404, 408–09 (Conn. 1838) (reaffirming "quasi corporation" principle but rejecting suit against a county). Thus, the absence of an explicit statutory authorization here is fatal.

Finally, I note that my conclusion that PZC is not a proper defendant is consistent with the views of at least one other judge in this district. In *Holt v. Town of Stonington*, Judge Hall granted summary judgment to a town planning and zoning commission on a municipal estoppel claim because the "legislature ha[d] not specifically authorized a planning and zoning commission as a separate legal entity or body politic with the power to sue and be sued" and "absent such an enabling statute, the PZC is not a proper defendant." 2011 WL 5864812, at *5. Along similar lines, Judge Hall granted summary judgment to an inland wetlands agency on § 1983 and other federal claims based on the absence of any specifically authorizing statute, as did Chief Judge Underhill for Title VII and *Monell* claims against the New Britain Water Department. *Watrous*, 902 F. Supp. 2d at 258; *Rogers v. City of New Britain*, 189 F. Supp. 3d 345, 357–58 (D. Conn. 2016).[10] Given the absence of a specifically authorizing statute here, I see no reason to reach a different result.

---

[10] I note that one of my colleagues has reached a different result with respect to whether planning and zoning commissions are persons under § 1983, relying in part on a Connecticut Supreme Court case stating that "the town and its zoning commission or wetlands agency [are] different parties to a proceeding." *Arrigoni Enterprises, LLC v. Town of Durham*, No. 3:08CV520(AWT), 2012 WL 13020055, at *1 (D. Conn. Feb. 14, 2012) (citing *Avalonbay v. Zoning Commission of Stratford*, 280 Conn. 405, 411 n.11 (2006); *see also Arrigoni Enterprises, LLC*, No. 3:08–CV–520, 2011 WL 4572025, at *8 (D. Conn. Sept. 30, 2011). The cited language in *AvalonBay* addressed a town's ability to intervene in zoning and wetlands appeals, which, as discussed above, are specific proceedings in which a zoning commission's authority to proceed as a party is statutorily conferred. *See AvalonBay*, 280 Conn. at 414 n.11. Nothing in *AvalonBay* suggests that PZC is a legal entity with the ability to "sue and be sued" *generally*. I respectfully decline to follow my colleague's reasoning.

Because no statute explicitly authorizes PZC to sue or be sued, PZC is neither a "person" for Farmington-Girard's § 1983 claims nor a separate "body politic" for its state law claims. The Municipal Defendants' motion to dismiss on this ground is thus GRANTED, and the Court DISMISSES all claims against PZC.

### C. Substantive & Procedural Due Process (Count I)

The Municipal Defendants argue that to the extent Farmington-Girard's first count under 42 U.S.C. § 1983 alleges violations of substantive and procedural due process, Farmington-Girard has failed to show that it has a constitutionally protected property interest. (ECF No. 49 at 13–15.) I agree.

To state a substantive due process claim, a plaintiff must demonstrate that (1) he was deprived of "a valid property interest in a benefit that was entitled to constitutional protection at the time it was deprived of that benefit," and (2) that the defendants' actions in depriving him of that interest were "so outrageously arbitrary as to be a gross abuse of governmental authority." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) (internal quotation omitted). "In order for an interest in a particular land-use benefit to qualify as a property interest for purposes of the substantive due process clause a landowner must show a 'clear entitlement' to that benefit." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (citations and subsequent history omitted); *see also Watrous*, 902 F. Supp. 2d at 258 (applying same test to procedural due process claim). In other words, "to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 n.1 (2d Cir. 1999). This inquiry

focuses "on the degree of official discretion and not on the probability of its favorable exercise." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 154 (2d Cir. 2006) (citing *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989)). The court's analysis of Farmington-Girard's property interest "therefore turns on the degree to which state and local law unambiguously limits the [] discretion to deny [the] petition. . . .," *i.e.*, whether the PZC "is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Clubside, Inc.*, 468 F.3d at 154; *Natale*, 170 F.3d at 263. "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *RRI Realty Corp.*, 870 F.2d at 918. Indeed, "even in a case where the denial of the permit is arbitrary[,] [t]he fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." *Id.* (citation omitted).

The well-pleaded allegations in Farmington-Girard's complaint do not show that it had a "clear entitlement" to approval of its December 10, 2012 site plan / special permit application. The amended complaint does include several allegations that, in reviewing Farmington-Girard's December 10, 2012 "site plan and special permit application for a permitted use, [PZC] acts in an administrative capacity and its review of the site plan is ministerial and it has no independent discretion beyond determining whether the application complies with the applicable regulations, and it is under a mandate to apply the requirements of the regulations as written." (Am. Compl. ¶ 53.) Farmington-Girard alleges that because its December 10, 2012 application was "complete and complied with the applicable regulations in effect" at the time, "there was a certainty or at least a very strong likelihood" that its application would be approved. (Am. Compl. ¶ 54.) But Farmington-Girard's allegations that PZC "acts in an administrative capacity," is "ministerial,"

and "has no independent discretion" are legal conclusions that need not be credited on a motion to dismiss. (Am. Compl. ¶ 53.) In fact, Farmington-Girard's amended complaint does not reference <u>any</u> zoning regulation under Connecticut law that purportedly shows PZC had no discretion to deny its December 10, 2012 site plan and special permit application. Accordingly, Farmington-Girard has not met its burden to plausibly allege a property interest.

Moreover, Connecticut law generally provides that planning and zoning commissions do have discretion to deny applications for a special permit. *See Irwin v. Planning & Zoning Comm'n of Town of Litchfield,* 244 Conn. 619, 626–27 (1998) ("We previously have recognized that the special permit process is, in fact, discretionary . . . . general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit."). By contrast, for certain applications for a site plan only, the PZC's statutory discretion under Connecticut law appears strictly cabined. *See* Conn. Gen. Stat. § 8-3(g)(1) ("A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations."); *Carr v. Town of Bridgewater*, 224 Conn. 44, 55 (1992) (collecting cases indicating that a town commission acted in an "administrative capacity" and had "no independent discretion beyond determining whether the plan complie[s] with the applicable regulations" when deciding whether to approve a site plan). Where a site plan and special permit application are submitted together, the courts look to whether the applications are severable to determine if approval is discretionary. *See Ctr. Shops of E. Granby, Inc. v. Planning & Zoning Comm'n of Town of E. Granby*, 253 Conn. 183, 191 (2000) ("[W]hen the application for the special permit is integral to and virtually indistinguishable from the application for the site plan, and when the use sought is a permitted use such that a public hearing is not required, the statutory provisions [in § 8-3(g)] regarding automatic approval are activated. In the absence of

such facts, however, and unless otherwise set forth in the relevant town regulations, the special permit and the site plan are not inseparable and, therefore, do not meld into a single entity warranting such statutory procedure.").

The complaint here makes no affirmative allegations that Farmington-Girard's site plan or special permit applications are "indistinguishable." Rather, though Farmington-Girard consistently terms its December 10, 2012 application as one for a "site plan/special permit" (*see, e.g.,* Am. Compl. at ¶ 2), the amended complaint also includes allegations suggesting that the special permit was an independent requirement for Farmington-Girard to build a fast food restaurant with a drive-through window at 510 Farmington Avenue, and the Superior Court so found as well. (*See id.* ¶¶ 25, 41 (at the time of acquisition and following *Farmington-Girard I*, "the Hartford Zoning Regulations then in effect allowed the property to be used as a fast food restaurant with drive-thru window service by special permit."). *See Farmington-Girard, LLC*, 2017 WL 6888851, at *6 n.17 ("Nevertheless, the plaintiff was applying for special permit approval, not merely site plan approval, and thus the automatic approval provisions [of Conn. Gen. Stat. §§ 8–3(g) and 8–7d(b)] do not apply.") Farmington-Girard makes no allegations suggesting that the two applications are "indistinguishable" and trigger the automatic approval provisions, and thus PZC had discretion to deny Farmington-Girard's special permit application.

Farmington-Girard argues in its brief that it has shown a "clear entitlement" because its allegations establish that it had a "vested property interest" under Connecticut law in approval of its December 10, 2012 application under the existing regulations. (ECF No. 53 at 28–29.) But it does not cite any relevant support for the proposition that it has a vested properly interest under Connecticut law. (ECF No. 53 at 28.) *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution. Rather they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." ); *see generally A. Gallo & Co. v. Comm'r of Envtl. Prot.*, 309 Conn. 810, 825, (2013) ("For a property right to be considered vested, in contrast to one that is expectant or contingent, it must function as a present interest."). It instead relies on two out-of-circuit cases that rely on property interests established under Colorado and Michigan law, respectively, and thus are inapposite. ((ECF No. 53 at 28) (citing *Moreland Properties, LLC v. City of Thornton*, 559 F.Supp.2d 1133, 1145 (D. Colo. 2008) (Colorado law), *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 (6th Cir. 1991) (Michigan law). And neither of the two Connecticut cases cited by Farmington-Girard, *Marmah, Inc. v. Town of Greenwich*, 176 Conn. 116, 121, 123 (1978) and *Levine v. Town Plan & Zoning Comm'n of Fairfield*, 25 Conn. App. 199, 209–210 (1991), establishes that Farmington-Girard had a vested property interest in approval of its application. (*See* ECF No. 53 at 28.) *See Adrian v. Town of Yorktown*, 341 F. App'x 699, 700–01 (2d Cir. 2009) (summary order) ("[T]he [plaintiffs] lack a vested property interest in the approval of its land use applications in light of the Town's discretion to grant or deny such approval.").

Because Farmington-Girard has not alleged facts showing that it had a "clear entitlement" to approval of its application, it has failed to allege a constitutionally protected property interest. Accordingly, the Municipal Defendants' motion to dismiss Farmington-Girard's substantive and procedural due process claims is GRANTED.

### D. Equal Protection (Count I)

The Municipal Defendants also move to dismiss Farmington-Girard's § 1983 claim to the extent it is based on the Equal Protection clause, arguing that the amended complaint does not plausibly allege either "selective enforcement" or "class of one" claims. (ECF No. 49 at 15.)

For a "class of one" claim, the "plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citation omitted). To succeed on such a claim, plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc.*, 468 F.3d at 159. In particular, such comparators must be "*prima facie* identical," and the "existence of highly similar circumstances can then provide an inference that the difference in treatment lacks any reasonable nexus with a legitimate governmental policy." *Progressive Credit Union*, 889 F.3d at 49 (citations and internal modifications omitted). Accordingly, "to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citation omitted).

By contrast, a "selective enforcement" claim "arises when the government seeks to apply the law to a plaintiff differently than it would to other similarly situated individuals for constitutionally impermissible reasons such as on grounds of a plaintiff's race or malicious intent." *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 319 (D. Conn. 2015), *aff'd*, 669 F. App'x 4 (2d Cir. 2016) (citation omitted). To succeed on such a claim, the plaintiff must show that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.*[11]

For purposes of both claims, "[w]hile a plaintiff is not required to proffer evidence of similarly situated [comparators] at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Am. Rock Salt Co., LLC v. Wilson*, No. 3:15-CV-01848 (MPS), 2017 WL 1243132, at *14 (D. Conn. Jan. 6, 2017). Nonetheless, "a plaintiff alleging unfair treatment in a zoning/building context must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged." *Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889 JFB AKT, 2015 WL 5093623, at *13 (E.D.N.Y. Aug. 28, 2015).

Farmington-Girard fails to state any equal protection claim, because the amended complaint does not adequately allege a comparator. Farmington-Girard asserts that "[t]he Burger King with drive thru window service right next door to [510 Farmington Avenue] is the comparator." (ECF No. 53 at 31.)[12] In particular, the amended complaint alleges that: (1) 510 Farmington Avenue abuts a Burger-King with a drive through window (Am. Compl. ¶¶ 26, 46); (2) the Municipal Defendants have applied the zoning laws differently against Farmington-Girard than Burger King by "enacting laws affecting only plaintiff's property," (Am. Compl. ¶¶ 99, 100);

---

[11] There is an open question in the Circuit about whether the degree of similarity required on a "selective enforcement" claim is identical to or less than that required for a "class-of-one" claim, but since the parties do not raise the issue, I assume for purposes of this motion the same two-part standard above applies for both. *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013) (collecting and comparing cases).

[12] *Arrigoni Enterprises, LLC*, 2011 WL 4572025, at *10, which Farmington-Girard cites (ECF No. 53 at 31), addressed how much evidence was required to survive summary judgment on a "class-of-one" claim, not the required pleading standard.

and (3) 510 Farmington Avenue was the "only property" affected by the December 11, 2012 rezoning from B-3 to B-4, the October 28, 2014 rezoning from B-3 to B-4, and the December 9, 2014 re-approval of the October 28, 2014 change (Am. Compl. ¶¶ 3, 26, 32, 62, 68).[13]  But the gravamen of Farmington-Girard's complaint is the Municipal Defendants' actions taken to preclude the development of 510 Farmington Avenue as a restaurant with a drive-through window, and the amended complaint gives no other "examples of applications and hearings that were similar to plaintiff's application," by Burger King or otherwise.  *Gregory*, 2015 WL 5093623, at *13.  This alone warrants dismissal.  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal of "class of one" claim premised on town's "refus[al] to consider their application" for a new sewer district where plaintiffs failed to allege "applications that were made by persons similarly situated"); *Gregory*, 2015 WL 5093623, at *13 (dismissing equal protection claim where complaint included no facts about alleged comparator's "property, the nature of his application, whether his land was granted any previous variances, or whether his neighbors objected to his application.").  In addition, although Farmington-Girard's proposed use for 510 Farmington Avenue and the nearby Burger King restaurant were both fast food restaurants with drive through windows, "that is where the similarities end."  *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 9 (S.D.N.Y.), *aff'd*, 705 F. App'x 50 (2d Cir. 2017).  510 Farmington Avenue is "currently a vacant lot," and, as Farmington-Girard's complaint alleges, was the "only property adversely affected *because* it was the only one vacant and not subject to grandfathering of use because of the vacancy due to the environmental remediation of the property."  (Am. Compl. ¶¶

---

[13] Though Farmington-Girard argues that all five challenged laws "affected plaintiff's property alone," the amended complaint does not include such allegations for the September 23, 2014 adoption of the Text Amendments or their April 14, 2015 reapproval.  (*See* Am. Compl. ¶¶ 46, 72.)

23, 26 (emphasis added); *see also id.* ¶¶ 3, 93 ("Because plaintiff's property was the only undeveloped and underdeveloped property, plaintiff's property was the only property immediately impacted and affected by all of the amendments").). The Burger King restaurant with a drive-through window already existed at the time of Farmington-Girard's applications and, the complaint suggests, was subject to grandfathering. Accordingly, the amended complaint fails to allege plausibly that Farmington-Girard, as owner of a vacant lot at 510 Farmington Avenue, was in "virtually identical" circumstances as the owner of the already established Burger King restaurant. *Gregory*, 2015 WL 5093623, at *14.

Accordingly, the Municipal Defendants' motion to dismiss Farmington-Girard's equal protection claims is GRANTED.

### E.     Bill of Attainder (Count I)

The Municipal Defendants move to dismiss Farmington-Girard's § 1983 claim based on the Bill of Attainder Clause of Article I, Section 10 of the United States Constitution, on the ground that the clause applies only to criminal cases. (ECF No. 49 at 20–21.) This argument is incorrect: the Bill of Attainder clause applies to civil actions too. *See Consol. Edison Co. of New York v. Pataki*, 292 F.3d 338, 355 (2d Cir. 2002) (affirming ConEd's civil challenge to a statute's cost-pass-through prohibition as a bill of attainder). The Municipal Defendants' motion to dismiss Farmington-Girard's bill of attainder claim on this ground is thus DENIED.

### F.     Contracts Clause (Count I)

The Municipal Defendants also move to dismiss Farmington-Girard's § 1983 claim based on the Contracts Clause of Article I, Section 10 of the United States Constitution, arguing that PZC's regulations did not impair Farmington-Girard's contractual relationship with McDonald's. (ECF No. 49 at 18–20.)

The Contracts Clause provides that no state shall pass any law "impairing the Obligation of Contracts." U.S. Const., Art. I, § 10. To determine whether a state law violates the Contracts Clause, the Second Circuit considers "three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006). Under the first element, "[t]he primary consideration in determining whether the impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997). Where a "plaintiff could anticipate, expect, or foresee the governmental action at the time of contract execution, the plaintiff will ordinarily not be able to prevail." *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 53 (2d Cir. 1998).

To the extent the Contracts Clause is applicable,[14] Farmington-Girard's amended complaint does not allege substantial impairment. Farmington-Girard expressly alleges that Farmington-Girard and McDonald's ground lease, the only contract ostensibly at issue in this case, was subject to a zoning contingency "that McDonald's USA, LLC obtain land use approvals to allow the construction of a McDonald's restaurant with drive-thru window service at 510 Farmington Avenue." (Am. Compl. ¶ 37.) Accordingly, the parties foresaw that the Municipal Defendants might not approve the construction of a McDonald's restaurant with drive-through, and so their reasonable expectations were not disrupted. Farmington-Girard's argument that the

---

[14] The Contracts Clause's "prohibition is aimed at the legislative power of the State, and not at the . . . acts of administrative or executive boards or officers . . . ." *Kinney v. Connecticut Judicial Dep't*, 974 F.2d 313, 314 (2d Cir. 1992).

Municipal Defendants' "actions did impair the contractual relationship by preventing satisfaction of the contractual land use approval requirement" is thus unpersuasive, as that same requirement shows that the parties contemplated such an outcome. (ECF No. 53 at 33.)

The Municipal Defendants' motion to dismiss Farmington-Girard's Contracts Clause claim is thus GRANTED.

### G.    Inverse Condemnation (Count II)[15]

Having concluded that some of the federal claims survive,[16] I turn now to the state law claims. The Municipal Defendants move to dismiss Farmington-Girard's second count for inverse condemnation. (ECF No. 49 at 24–25.)

"Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Barton v. City of Norwalk*, 326 Conn. 139, 146 (2017) (citation omitted). "Connecticut law on inverse condemnation requires total destruction of a property's economic value or substantial destruction of an owner's ability to use or enjoy the property." *Id.* at 147. "The issue of whether there has been a substantial destruction of an owner's ability to use or enjoy a property . . . is a fact intensive issue" with "no bright line standard." *Id.* at 147–48 (citation omitted). Complete destruction of the owner's use and enjoyment is not required. *See id.* at 154–55 ("Logic dictates that where inverse condemnation is found for substantial—but not complete—destruction of an owner's ability to use or enjoy property . . . the taking is of constitutional magnitude."). Nonetheless, where

---

[15] I do not address the Municipal Defendants' argument to dismiss the "tortious interference" claim, because Farmington-Girard states that Count 1 alleges violations of 42 U.S.C. § 1983, not state law. (ECF No. 49 at 23–24; ECF No. 53 at 38 n.9.)

[16] Farmington-Girard also alleged a federal takings claim, which the Municipal Defendants did not challenge. (Am. Compl. ¶¶ 101–02.)

a "putative condemnee fails to show that the property cannot be used for any reasonable and proper purpose, liability for inverse condemnation is precluded." *Id.* at 149.

I conclude that Farmington-Girard has sufficiently pleaded an inverse condemnation claim. Farmington-Girard alleges that, as a result of the Municipal Defendants' actions, "[a]ny other use [of 510 Farmington Avenue besides for fast food restaurant uses with drive-through window service] renders the property highly unmarketable for purposes of generating sufficient cash flow to recoup the purchase, remediation and carrying costs of the property." (Am. Compl. ¶ 26; *see also id.* ¶ 85, 93.) Farmington-Girard also alleges that it "received inquiries regarding possible lease of the property at 510 Farmington Avenue for a fast food restaurant with drive-thru window service" from brokers over a six-year period, and "[d]espite plaintiff's years of attempting to market the property, the only significant development opportunity presented to plaintiff," the McDonald's ground lease, "has been lost" as a result of the Municipal Defendants' actions. (Am. Compl. ¶¶ 27, 93.) Although Farmington-Girard may ultimately fail to prove that 510 Farmington Avenue cannot be used for any "reasonable and proper purpose," its pleadings support this inference at this early stage. *See Barton*, 326 Conn. 139, 147–155 (2017) (concluding that taking of nearby parking lot resulting in 80% diminution in value to plaintiff's neighboring property constituted inverse condemnation of neighboring property).

Accordingly, the Municipal Defendants' motion to dismiss Farmington-Girard's Inverse Condemnation claim is DENIED.

## H.    Municipal Estoppel (Count III)

The Municipal Defendants move to dismiss Farmington-Girard's third count for municipal estoppel. (ECF No. 49 at 26–27.)

"[I]n special circumstances, a municipality may be estopped from enforcing its zoning regulations . . . . In municipal zoning cases, however, estoppel may be invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations . . . ." *Cortese v. Planning & Zoning Bd. of Appeals of Town of Greenwich*, 274 Conn. 411, 418 (2005) (citation omitted). The elements of municipal estoppel are that: "(1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." *Id.* Although the Court recognizes that Farmington-Girard will bear a "substantial burden of proof" at the evidentiary stage, it has pleaded sufficient facts to support its estoppel claim. *Id.* at 419.

First, Farmington-Girard has plausibly alleged that authorized agents of the Municipal Defendants made representations to Farmington-Girard to induce it to believe its December 10, 2012 application was pending under the then-existing regulations. Specifically, the amended complaint alleges that DDS accepted its $300 application fee and assigned an application number (Am. Compl. ¶ 30), and that Kim Holden, who was a Chief Staff Planner with DDS, told Farmington-Girard by letter that its application was "considered incomplete," and that Farmington Girard would need to submit additional information "[i]f you wish to proceed with your submittal." (Am. Compl. ¶ 34.) Farmington-Girard has plausibly alleged that these statements were intended to induce Farmington-Girard to believe that that the Municipal Defendants "would process and

plaintiff could proceed with the December 10, 2012 application upon submission of further information." (Am. Compl. ¶ 107.) The Municipal Defendants' argument to the contrary relies on its own characterization of the facts, which the Court may not credit on this motion. (ECF No. 49 at 26.)

Second, Farmington-Girard has plausibly alleged that it acted reasonably by relying on the Municipal Defendants' representations. Specifically, Farmington-Girard had "no convenient means of acquiring knowledge that defendants' actions and statements were false and misleading," specifically—whether the December 10, 2012 application actually *was* pending. (Am. Compl. ¶ 108.) The Municipal Defendants argue that Farmington-Girard was not deprived of any knowledge because all zoning changes were public. (ECF No. 49 at 26–27.) But the municipal estoppel claim is not based on the zoning changes themselves, but rather whether the Municipal Defendants led Farmington-Girard to believe that its December 10, 2012 application was pending under the then-existing regulations.

Third, Farmington-Girard has plausibly alleged that it acted in reliance on the Holden letter by "not submitting a new site plan/special permit application immediately after the August 19, 2014 decision in [*Farmington-Girard I*] and instead providing further information supplementing and in support of its December 10, 2012 application." (Am. Compl. ¶ 109; *see also id.* ¶¶ 41, 74 (same).) The Municipal Defendants' argument that the McDonald's ground lease was contingent on zoning approval is irrelevant to Farmington-Girard's alleged failure to file a new site plan application. (ECF No. 49 at 27.)

Fourth and finally, Farmington-Girard has plausibly alleged that it would suffer a substantial loss if the Municipal Defendants were permitted to negate the acts of its agents. "[T]he primary consideration in determining whether a party will suffer a substantial loss is whether a

party has made significant expenditures in reliance upon the representation of a municipal official." *Levine v. Town of Sterling*, 300 Conn. 521, 540 (2011). Farmington-Girard alleges that "the market price at the time of purchase factored in allowance for a restaurant with drive-thru window service" (Am. Compl. ¶ 26), and so the Municipal Defendants' failure to process its application under the then-existing regulations (*i.e.* if the application was merely incomplete and thus pending on December 10, 2012) has "resulted in the destruction of plaintiff's property value." (Am. Compl. ¶¶ 85, 94; *see id.* ¶ 110 (asserting that "Plaintiff has been and will continue to be subjected to a substantial loss due to the defendants negating the acts of their agents" but describing only the acts, not the loss).) Another judge in this district has found that similar allegations were sufficient to survive a motion to dismiss. *See Holt,* 2010 WL 2595127, at *4 (denying motion to dismiss municipal estoppel claim where plaintiff "suggested that she purchased the Property with the intent to build on it, and that, absent that use, it has 'lost virtually all of its value'" and inferring that the "purchase price was substantially inflated as a result of [the town's representations]"). The Court further notes that the Municipal Defendants do not challenge whether Farmington-Girard adequately pleaded substantial loss. (ECF No. 49 at 26–27.)

Accordingly, the Court finds that Farmington-Girard has adequately pleaded a claim for municipal estoppel, and the Municipal Defendants' motion to dismiss this count is DENIED.

## I.      Declaratory Judgment (Count IV)

Lastly, the Municipal Defendants move to dismiss the fourth count in the amended complaint, which purports to assert a claim under 28 U.S.C. §§ 2201, *et seq.*, for a declaratory judgment. The Municipal Defendants argue that declaratory judgment is a remedy, not a separate cause of action. (ECF No. 49 at 27–28.) It is well-settled that the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, does not "provide an independent cause of action . . . [i]ts operation is

procedural only—to provide a form of relief previously unavailable." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Although Farmington-Girard argues that *Joint E. & S. Dist. Asbestos Litig.* is distinguishable because it primarily addressed the "case or controversy" requirement in Article III, judges in this district and elsewhere have regularly dismissed declaratory judgment claims pleaded as separate counts. *See Inclusion First, LLC v. Macy*, No. 3:14-CV-1786(AWT), 2015 WL 8476329, at *8 (D. Conn. Sept. 23, 2015) (dismissing declaratory judgment count as "not based upon any independent cause of action"); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 283 (D. Conn. 2008) (granting summary judgment on declaratory judgment count because plaintiff "seeks declaratory relief on all counts in the 'Relief Demanded' section of his fourth amended complaint, and because [the count] is not predicated on any underlying cause of action."); *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) ("[D]eclaratory judgments and injunctions are remedies, not causes of action." (citation omitted)). Here, Farmington-Girard seeks effectively identical declaratory relief both in its demand and as a separate count. (*Compare* Am. Compl. ¶ 113 *and id.* at 29–30). The declaratory judgment count fails to state an independent cause of action, and thus the Municipal Defendants' motion to dismiss Count IV is GRANTED. This will not, of course, preclude the Court from awarding declaratory relief if it is warranted. *See* Fed. R. Civ. P. 54(c).

## IV.    Conclusion

The Municipal Defendants' motion to dismiss is GRANTED in part and DENIED in part. (ECF No. 42). Farmington-Girard's federal claims are ripe. All claims against PZC are DISMISSED, and the Clerk is directed to terminate PZC as a defendant. On Count I, Farmington-Girard has adequately pleaded its § 1983 claim based on the Bill of Attainder Clause against the City of Hartford; its § 1983 claim based on substantive and procedural due process, Equal

Protection, and Contracts Clause violations are DISMISSED for failure to state a claim. The Municipal Defendants did not move to dismiss Farmington-Girard's takings claim, which therefore also survives against the City of Hartford. Farmington-Girard has adequately stated claims for inverse condemnation (Count II) and municipal estoppel (Count III) against the City of Hartford. The declaratory judgment count (Count IV) is DISMISSED.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              February 26, 2019